Missouri Valley Dredging Company v. Commissioner.
Missouri Valley Dredging Co. v. Commissioner
Docket No. 59806.
United States Tax Court
T.C. Memo 1957-38; 1957 Tax Ct. Memo LEXIS 216; 16 T.C.M. (CCH) 166; T.C.M. (RIA) 57038; February 28, 1957
*216 Petitioner, a pipeline construction company, loaned one who aided in procuring construction contracts the sum of $40,000, taking the latter's note for that sum. The construction contracts were extinguished due to the prime contractor failing to secure a Certificate of Convenience and Necessity. Held, petitioner was not entitled to take a bad debt loss after it learned the application for the certificate would be denied, and after the close of the fiscal year in which the deduction was taken. Held, further, petitioner was not entitled to a deduction of $40,000 as an ordinary and necessary business expense under section 23(a)(1)(A) of the Internal Revenue Code of 1939. Bryce Crawford, Jr., Esq., Redick Tower, Omaha, Neb., for the petitioner. Ivan L. Onnen, Esq., for the respondent. MULRONEY Memorandum Opinion MULRONEY, J/udge: Respondent determined a deficiency in income tax of petitioner for the fiscal year ending May 31, 1952 in the amount of $22,800. The entire deficiency results from respondent's disallowance of a bad debt deduction which petitioner took on its 1952 income tax return. The correctness of such disallowance is the single question presented. *217 The record presents a set of facts, most of which were stipulated, upon which there is no dispute. [Findings of Fact] Petitioner is a Nebraska corporation with its principal place of business in Omaha, Nebraska, and it filed its income tax return on an accrual basis for the fiscal year ended May 31, 1952, with the district director of internal revenue for the district of Nebraska, at Omaha, on September 16, 1952. Petitioner was engaged in what is described as "the marine pipeline business" which seems to be the laying of pipelines underneath rivers. Early in 1952, petitioner's president and principal stockholder, Joseph G. McMaken, learned that a corporation, known as the Texas-Ohio Gas Company, had been formed for the purpose of putting in a pipeline from Texas to the east coast of the United States at a cost of many millions of dollars. Before the Texas-Ohio Gas Company could put in the pipeline it had to secure a Certificate of Convenience and Necessity from the Federal Power Commission. During the early part of 1952, McMaken met several times with Clyde Austin, an official of the Texas-Ohio Gas Company relative to petitioner's installation of some 15 or 20 river crossings *218 of the contemplated pipeline. L. E. Reed, a long time acquaintance of McMaken's and a man who had experience in pipeline work, was present at these meetings. He was not an official of the Texas-Ohio Gas Company but he had influence with the company and it fairly appears he was helping petitioner secure contracts for the river crossing portions of the contemplated pipeline. On March 21, 1952, petitioner, acting through McMaken, entered into an agreement, which was amended and reduced to writing on March 22, 1952, whereby petitioner agreed to install certain designated river crossings along the contemplated pipeline, as an independent contractor. The contract, which was executed by Clyde Austin for the Texas-Ohio Gas Company, was for a total price of $3,346,000 and the last paragraph of the contract reads: "This agreement is subject to the one and only condition that Company [Texas-Ohio Gas Company] receives a Certificate of Public Convenience and Necessity from the Federal Power Commission to construct the proposed pipe line." Also, on March 21, McMaken gave Reed his personal check for $40,000, taking back from Reed his note for $40,000 dated March 21, 1952, payable 6 months *219 after date with 6 per cent interest, to petitioner corporation. A few days later petitioner reimbursed McMaken for this $40,000 by a check dated March 24, 1952, from petitioner to McMaken for $40,000. Also, on March 28, 1952, petitioner entered into a written contract with Reed, agreeing "In consideration of your services in enabling us to acquire contracts with Texas-Ohio Gas Company for installing river crossings" to pay Reed 25 per cent of the net profit from such contracts. The record shows another contract on the same date between the same parties where, for a recited consideration of $10, Reed was granted an option as to subcontract rights for the construction of any or all of the river crossings. Some time in October 1952, the application of the Texas-Ohio Gas Company for a Certificate of Convenience and Necessity for the construction of the proposed pipeline was rejected by the Federal Power Commission, which rejection ended all of the contracts. In its income tax return for the fiscal year ended May 31, 1952, petitioner claimed a bad debt deduction for $40,000 based on the Reed note, which, it will be noted, was not due until some four months after the close of petitioner's *220 fiscal year. McMaken stated the reason for taking the deduction was that by September when the return for the 1952 fiscal year was filed, he knew the application for the Certificate of Convenience and Necessity was going to be denied. [Opinion] Section 23(k)(1) allows a deduction for debts which "become worthless within the taxable year." Petitioner argues, generally, a note payable in the future can become worthless in a year before the maturity year and this can be conceded as a general principle. Clarence Bonynge, 41 B.T.A. 84, affd. per curiam Bonynge v. Helvering, 117 Fed. (2d) 157. Petitioner fell far short of sustaining its burden of showing the $40,000 note became worthless during the taxable year ending May 31, 1952. The debt had only been in existence about two months. Petitioner made no investigation of Reed's financial status. Reed testified that he did have assets on May 31, 1952, consisting of cash of $12,000, and he had put $25,000 of the $40,000 received on the loan into an oil and gas production company. The value of this investment that he owned on May 31, 1952, is not shown. He had also loaned about $13,000 of the $40,000 to Clyde *221 Austin. The value of this loan obligation is not shown but Reed testified he considered this a loan but he expected to be paid back "if the Texas-Ohio built their line." We find petitioner failed to sustain its burden of showing the Reed note worthless in its fiscal year 1952 and respondent was correct in disallowing the $40,000 bad debt deduction for that year. Petitioner argues the $40,000 deduction should be allowed as "an ordinary and necessary business expense" under the provisions of section 23(a)(1)(A) of the Internal Revenue Code of 1939. The argument here is that it was in the nature of promotional expense. The argument is foreclosed by McMaken's testimony and our holding that petitioner's transaction with Reed was a loan which Reed was to repay. McMaken characterized this as a "loan" and he talked to Reed several times after the maturity of the note about his paying it - the last time being the day before trial. Reed testified that at the time he gave the note and received the check for $40,000 he understood he was personally indebted to petitioner in the amount of $40,000. The most the record shows is that both parties rather expected Reed's 25 per cent of profit contract *222 would be the source of payment. But the extinguishment of the contract by the rejection of the permit application was not considered by either as an extinguishment of the note obligation. We hold petitioner failed in its burden of showing the $40,000 deductible as an ordinary and necessary business expense. Decision will be entered for the respondent.